**In the Matter of the Workers' Compensation Claim of John A. BRITTON, Appellant (Employee–Claimant),**

**v.**

**HALLIBURTON SERVICES, Appellee (Employer–Objector).**

**No. 94–173.**

Supreme Court of Wyoming.

May 4, 1995.

Kennard F. Nelson of Kirkwood, Nelson & Huber, P.C., Laramie, for appellant.

Thomas R. Smith of Murane & Bostwick, Casper, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

GOLDEN, Chief Justice.

In this worker's compensation appeal, we consider whether substantial evidence supports the findings and conclusions of the hearing examiner.

We affirm the order of the district court denying additional benefits.

## FACTS

On December 15, 1990, appellant John Britton (Britton), while working for Halliburton Services (Halliburton), fell from a moving truck, injuring his back and his right knee. Britton received medical benefits and temporary total disability benefits until March 14, 1991. Just before obtaining his medical release to return to work, Britton fell down a flight of stairs, breaking a toe. A physician gave Britton a full release to return to work on March 14, 1991. Britton, however, did not return to work because he did not feel he was 100% physically able.

On March 22, 1991, Britton consulted a second physician. The second physician diagnosed Britton's problems as a possible arthritic condition rather than a work-related injury. Britton, however, did not return to work at Halliburton. Although Britton continued to suffer pain and discomfort, it was not until approximately a year later that he saw a third physician.

The third physician ruled out inflammatory arthritis and ordered a Magnetic Resonance Imaging scan (MRI) of Britton's back. This approach was chosen because x-rays were inconclusive and anti-inflammatory medicine was ineffective. The first MRI, taken in May 1992, was of Britton's cervical spine. It proved to be inconclusive so an MRI of Britton's lumbar spine was performed in January 1993. The second MRI disclosed an abnormality with the last lumbar disc pressing up against the nerve root, i.e., a herniated disc. Britton received a referral to a fourth physician who prescribed physical therapy.

During the period in which the MRI scans took place and physical therapy started, Britton experienced two incidents that could have caused his back injury. First, Britton slipped and fell while mopping a floor, landing on his back. That accident resulted in emergency room treatment. Sometime later, Britton claimed his back "popped" during a physical therapy session. That event increased Britton's back pain.

In February 1993, Britton then received a referral to a fifth physician. After reviewing Britton's MRI results, that physician agreed Britton had a bulging or herniated disc. He testified that the initial work-related accident could be, and probably was, the mechanism which caused the injury to the disc. The physician acknowledged, however, that the fall down the stairs and/or the fall while mopping could have contributed to or caused the injury. The testimony of the fifth physician also suggests that, while an MRI scan could not date the initial injury, the presence of calcification around the rim of the disc could aid in dating a long-term injury.

After considering all the evidence, the hearing examiner concluded Britton had failed to show an entitlement to benefits based solely on the December 1990 injury. The hearing examiner found other possible sources of the injury, including the falls and the incident in physical therapy. In addition, the hearing examiner held that, while some calcification around the rim of the disc might date the injury, Britton failed to offer any such evidence.

## DISCUSSION

Britton challenges the hearing examiner's conclusion that his injury was not further compensable after he received a release to return to work in March 1991. He contends the evidence proves that his fall from a moving vehicle on December 15, 1990, is the cause of his injury. In addition, he asserts that requiring a claimant to prove the absence of other possible sources of injury places an impossible burden of proof on him.

### Standard of Review

■ This court has settled the standard for reviewing factual findings made in a

worker's compensation hearing. If, after examining the entire record, we find substantial evidence to support the agency's finding, we will not substitute our own judgment for that of the agency. Under such circumstances, we must uphold the agency's finding. *Jaqua v. Wyoming Workers' Compensation Div.,* 873 P.2d 1219, 1220 (Wyo.1994).

■ Substantial evidence is relevant evidence a reasonable mind might accept in support of a conclusion. It is more than a scintilla of evidence. *Little America Refining Co. v. Witt,* 854 P.2d 51, 58 (Wyo.1993).

### Findings

The hearing examiner made the following findings relevant to this issue:

3. Dr. John D. Bailey released the employee/claimant to return to work without restrictions on March 14, 1991. However, the claimant himself did not feel that he was 100% able to return to work, and did not return to work.

4. Another physician who saw the employee/claimant on March 22, 1991, Dr. Anne MacGuire, believed that his problems stemmed not from a work-related injury but possibly from an arthritic problem.

\* \* \* \* \* \*

6. There are three incidents in the record where the employee could have sustained injury to his back, other than by the injury of December 15, 1990.

(a) Prior to seeing Dr. MacGuire, the employee fell down a flight of stairs. He testified to some increase in low back pain. His testimony is to some extent inconsistent with Exhibit 11 which relates no complaints other than a broken toe.

(b) The employee testified to his back "popping" during physical therapy.

(c) In August of 1992, the employee slipped and fell and went to the emergency room as a result of that fall.

7. Dr. Akmakjian's testimony is equivocal. He notes some ability to date a bulging disk by calcification. But employee/claimant has offered no evidence to date the bulging disk.

It is beyond question Britton sustained an injury to his lower back when he fell from the truck in December 1990 while employed by Halliburton. Britton contends that once he established the work connected injury, subsequent progression of that condition remains compensable if the worsening was not the result of an independent non-industrial cause.

The Wyoming statutes entitle an employee/claimant to additional benefits. WYO.STAT. § 27–14–605(a) (1991) [1] provides in part:

> If a determination is made in favor of or on behalf of an employee for any benefits under this act, application may be made to the division by any party within four (4) years from the date of the last payment for additional medical and disability benefits or for a modification of the amount of benefits **on the ground of increase ... of incapacity due solely to the injury, or upon grounds of mistake....** (emphasis added)

The plain language of WYO.STAT. § 27–14–605(a) grants any party—employee, employer or the Worker's Compensation Division—a four-year window in which to petition to reopen a case for: (1) additional medical and disability benefits; or (2) modification of the amount of benefits because (a) of an increase or decrease of incapacity due solely to the injury, or (b) a mistake or fraud has occurred. Here, Britton seeks an increase in the amount of his benefits based on a mistake in diagnosis. The mistake alleged is the neglect to use the definitive tool of MRI to timely discover the herniated disc.

■ A case illustrating the application of this law regarding mistake is *Hunteman v. Ward Transport, Inc.,* 706 P.2d 1126 (Wyo. 1985). In *Hunteman,* an employee injured his back in a work-related injury. The employee obtained a release to return to work full-time, but continued to experience problems. Subsequent tests by a neurosurgeon revealed a possible herniated disc and a laminectomy was performed. The neurosurgeon could not tell precisely when the injury oc-

1. As amended by WYO.STAT. § 27–14–605(a) (Supp.1994).

curred. His testimony was that it was more probable than not the herniated disc existed while the orthopedic surgeon was treating the employee. There was, however, testimony that the cause of the herniated disc could as easily have occurred while off the job as during employment. We upheld the district court's denial of the application for an increase in benefits. Although there was conflicting evidence, we concluded the district court did not err in relying on the testimony of the orthopedic surgeon. Conflicting evidence simply creates a question of fact that the fact finder must resolve. Where there is evidence to support the fact finder's conclusion, that conclusion should not be "adjusted" on appeal. That same reasoning applies in this instance.

■ With respect to additional benefits, the statute requires Britton to show he has sustained additional incapacity due solely to the injury. The reason for this is the concept of "finality." A court should accord finality to the initial award made because of the work-related injury. "The purpose of § 27–14–605(a) is to balance the concept of finality with the desire to see that a claimant receives no less and no more than that to which he is lawfully entitled." *State ex rel. Workers' Compensation Div. v. Jerding*, 868 P.2d 244, 249 (Wyo.1994) (collecting cases). In other words, once an agency makes an initial award, the agency also settles any compensation regarding the progression of the injury.

The employee/claimant, however, can challenge this presumption by showing that progression of the injury was due solely to the initial injury. *Loghry v. Capshaw Well Service*, 739 P.2d 1227 (Wyo.1987), illustrates this principle. In *Loghry,* the appellant claimed an increase in incapacity. The basis of increased incapacity was the recurrence of seizure activity, an increase in hearing deficiency and an increase in the pain and stiffness in the neck. At trial, however, the appellant failed to produce any evidence showing an increase in headache pain or hearing deficiency since the time of his original award. A physician testified the appellant suffered symptoms similar to those of rheumatoid arthritis. Despite a claim that

the pain and stiffness in his neck were the result of the injury, and his arthritic condition had no connection to the work related injury, we held that the evidence sustained a finding that the increase in incapacity was not due *solely* to the injury.

■ While there is no dispute here that Britton sustained a work-related injury in December 1990, and that he received benefits through March 1991, it is also clear that he received a release to return to work without restrictions. Britton claims the herniated disc and the accompanying back pain are the result of the initial injury. Wyoming's rule with respect to asserting a change of condition, however, is in accord with the general rule; a party requesting the change, whether claimant or employer, has the burden of proof. *Lehman v. State ex rel. Wyoming Workers' Compensation Div.*, 752 P.2d 422, 425 (Wyo.1988). Therefore, by invoking WYO.STAT. § 27–14–605(a), a claimant assumes the burden of demonstrating "increase ... of incapacity due *solely* to the injury." WYO.STAT. § 27–14–605(a) (1991) (emphasis added.)

The hearing examiner found there were other likely origins for the injury to Britton's back; there was a significant passage of time during which Britton could have injured himself; and Britton failed to offer any evidence to date the bulging disc. We hold these findings are supported by substantial evidence.

Britton argues that requiring proof to exclude · all other possible sources of injury creates an impossible burden. In other words, the claimant must prove nothing else happened when there is no proof that something else did occur. The governing rule, however, is that the party who wishes to reopen a worker's compensation claim assumes the burden of showing the statutory basis for doing so. *FMC v. Lane*, 773 P.2d 163, 166 (Wyo.1989). In this instance, that burden was not met.

Because we conclude there is substantial evidence to support the hearing officer's de-

terminations, the order of the district court must be affirmed.